## Brown *v.* Watkins.

### (*Nashville.* April 4, 1897.)

1. ADVERSE POSSESSION. *Gives only possessory right to land, when.*

   Seventeen years' adverse possession of land, under a parol gift, vests the possessor, not with a title, but with a mere possessory right, which is lost by a surrender or abandonment of the possession to the true owner by the possessor or his heirs, although the latter may be minors. (*Post, pp. 455–459.*)

   Cases cited and approved: Marr *v.* Gilliam, 1 Cold., 489; Crutsinger *v.* Catron, 10 Hum., 26.

2. POSSESSION. *Constructive, with true owner.*

   The constructive possession of land goes with the title. Where, therefore, a possessor, after acquiring a possessory right, abandons the possession, the constructive possession does not remain with him or his heirs, but reverts to the owner of the title. (*Post, pp. 459, 460.*)

3. TENANCY BY CURTESY. *Possessory right.*

   Tenancy by curtesy does not attach to the wife's mere possessory right to land. (*Post, p. 460.*)

---

FROM MAURY.

---

Appeal from Chancery Court of Maury County. A. J. ABERNATHY, Ch.

GRANBERY & MARKS and E. H. HATCHER for Brown.

W. S. F̲ᴌᴇᴍɪɴɢ and G. T. Hᴜɢʜᴇs & Soɴ for Watkins.

McAʟɪsᴛᴇʀ, J. This bill was filed in the Chancery Court of Maury County by D. M. Brown, next friend to his minor son, James Hugh Brown, to assert title to a tract of land known as the Webb place, comprising 360 acres. The bill charges that on or about December 16, 1873, F. H. Watkins, the grandfather of complainant, James Hugh, gave by parol to complainant's mother, Mrs. Alice G. Brown, wife of D. M. Brown and daughter of the said Watkins, the land in controversy; that complainant's mother and father went at once into the possession of said land, the father holding simply in right of his wife, and remained in continuous adverse possession until September 22, 1890, when complainant's mother died, leaving him her only heir; that D. M. Brown and complainant temporarily vacated said' farm after his mother's death, but that complainant has never abandoned or surrendered his right, title, or claim thereto.

Complainant alleges that his mother, for a period of seventeen years, remained in adverse possession of said farm, paying taxes on the same, and that his father, the said D. M. Brown, remained in the occupancy thereof for a year after the death of complainant's mother, and so he alleges that, by virtue of said parol gift from F. H. Watkins, as well as by the adverse possession of said farm for said period of time, complainant's mother acquired a

title, right, equity, and ownership in and to said farm, which descended to complainant as her sole heir, and which cannot now be disturbed.

Answers were filed by the executors of Watkins in which it is averred that shortly after the death of Mrs. Alice G. Brown, mother of complainant, the said F. H. Watkins wrote a note to D. M. Brown telling him he might occupy the place during the year 1891, rent free, inasmuch as he had planted some of his crop, provided he did not sublet, and also proposing to claim no back rents from him provided he made no claims for repairs; that on the fourth of October, 1890, D. M. Brown answered accepting the offer to use and control the said Webb place for the year 1891, rent free; that under this agreement D. M. Brown, the father, remained there during 1891 and afterwards surrendered possession. He and his son, James Hugh, voluntarily left the premises in January, 1892, and at that date the said F. H. Watkins, the grandfather, took possession for himself, and remained in possession until September, 1895, when he died; that, by his will, the said F. H. Watkins devised this land to his executors, who immediately took possession; that, a few days after the death of F. H. Watkins, the hired man who occupied the dwelling left, and D. F. Watkins, one of the executors, securely fastened the house, gates, etc., and fences inclosed the entire premises; that he so left the premises on Saturday, October 5, and returned the following

Thursday to look after the stock and premises, when he found that D. M. Brown and James Hugh Brown had, by forcing an entrance, gotten into the kitchen and outhouse. Defendants, however, claim that they still maintained their possession. Complainant filed an amended bill, in which he insists that although F. H. Watkins and defendants had the actual possession, as a matter of law the constructive possession was with him, and that, by twenty years' prescription, complainant has the fee; that D. M. Brown did not claim tenancy by the curtesy, and that complainant has never surrendered his rights. Proof was taken and a jury demanded to try certain issues of fact. The Court finally struck out all the issues as immaterial and dismissed the bill for want of equity.

The facts, when laid in a narrow compass, are that, in 1873, F. H. Watkins granted by parol gift a tract of land to a married daughter. She and her husband remained in continuous possession until September 22, 1890, when the wife died, leaving the husband in possession. In 1892 the husband, with her son, this complainant, voluntarily vacated the premises. The father-in-law and grantor re-entered and held possession without objection until his death, in 1895, and thereupon, complainant, the minor, and his father went upon the premises, and, gaining an entrance to an outhouse and kitchen, claim possession and seek by their bill to enjoin the executors of F. H. Watkins, deceased, against coming on the premises.

The claim now made by the minor is that, while he had no actual possession after the death of his mother, in contemplation of law, he was in the constructive possession, and that adding his constructive possession to the seventeen years his mother was in actual possession, made a title by twenty years' prescription, which presumes a deed or grant.

It is also claimed, on behalf 'of the minor, that his mother's adverse possession for over seven years· was cast by descent upon him, and ·that he could neither abandon it nor be deprived of it. We are of opinion this contention is unsound, and that the decree of the Chancellor was correct. The complainant can assert no higher title to this land than that possessed by his mother. Mrs. Brown only had a possessory right under the second section of the Act of 1819. She had no color of title whatever, and the moment the possession was lost, the true owner was enabled to assert title. The record shows that, upon the death of Mrs. Brown, after being in adverse possession for seventeen years, the possession was abandoned by complainant and his father, and the parol gift was disaffirmed by the grantor, who resumed possession.

In the case of *Crutsinger* v. *Catron*, 10 Hum., 26, Judge Turley, in speaking of possession under the second section of the Act of 1819, says: "It constitutes a mere defense against a possessory action, which is lost the moment possession is abandoned. No title is acquired to land so held but a

mere right of possession, which is not alienable or descendible, and not liable to payment of debts, because of no estate or interest in the lands."

The case of *Marr* v. *Gilliam*, 1 Cold., 489, is cited by counsel for complainant as modifying the doctrine of the former case, and holding that such a right is alienable and descendible. Judge Wright, in commenting upon the language of Judge Turley, says: "The meaning of which, as we take it, is that if the possession be lost or abandoned, it cannot be acquired against the rightful owner either by the tenant himself, or his heir or purchaser under him, such a possession being a mere matter of defense."

It is true that Judge Wright states that such a right might be transmitted by devise, descent, or voluntary transfer when the possession is continued without interruption in the devisee or heir, and may be used, when not abandoned, in an action of defense against the owner. It is in this sense that Judge Wright speaks of such possessory right being alienable or descendible. The record in this case shows there was no adverse possession by the minor or his father, D. M. Brown, after the death of Mrs. Alice G. Brown.

But it is argued that complainant, upon the death of his mother, was vested with the constructive possession of the land, and that his constructive possession, added to the actual adverse possession of his mother for seventeen years, has matured into a title by prescription, which presumes a deed. But

it is a sufficient answer to this proposition to say that constructive possession is always dependent upon title. Neither complainant nor his mother ever having had any color of title to this land, there can be no constructive possession. The fact that complainant was a minor cannot alter the rule. The minor was never in actual possession, and he cannot complain of being deprived of a right to which he was never entitled.

The cases cited by counsel arising under the homestead law furnish no analogy for the determination of the present question, since the rights of a minor in a homestead are regulated by express provisions of our Constitution and statutes.

It has also been suggested in argument that D. M. Brown, father of complainant, was entitled to a life estate or a tenancy by the curtesy in this land, and that the possession of the minor would be merely postponed until the death of the husband, and in the meantime the limitation would not run against the minor or remainderman. We do not think this is such an estate as would have entitled the husband to a tenancy by the curtesy. It is true it has been held by this Court that the husband may be entitled to a tenancy by the curtesy in an equitable estate belonging to his wife, but a mere possessory right which the wife might use as a defense to maintain possession, is in no sense an estate either legal or equitable.

Affirmed.